**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

KABONI SAVAGE,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

    Defendants.

</td><td>

Civil Action No. 21-1057 (CKK)

</td></tr>
</table>

**MEMORANDUM OPINION**
(July 28, 2022)

Plaintiff Kaboni Savage ("Savage") is incarcerated in the Administrative Maximum Facility at the U.S. Penitentiary in Florence, Colorado ("ADX Florence") and subject to Special Administrative Measures ("SAMs"), which limit his outside contacts to seven family members and require the monitoring of his calls, visits, and mail. Savage brings this civil action against the Department of Justice ("DOJ") and certain DOJ officials (collectively, "Defendants"), challenging the denial of his annual requests to allow him additional social contacts.

Pending before the Court is Defendants' [14] Motion to Dismiss or, in the Alternative, for Summary Judgment. Defendants contend that Savage has failed to exhaust his administrative remedies by seeking modifications to his SAMs directly from DOJ, bypassing the Administrative Remedy Program ("ARP") administered by the Bureau of Prisons ("BOP"). Defendants argue that, under the Prison Litigation Reform Act ("PLRA"), Savage was required to first pursue his grievance through the ARP, but failed to do so. Plaintiff does not dispute that he did not proceed through the ARP's four-step process, but instead sought SAMs modifications directly from DOJ, which has repeatedly declined to modify his permitted social contacts. However, Plaintiff contends that BOP's ARP did not offer an "available remedy" because BOP could not modify his SAMs contact list without DOJ approval.

1

Upon review of the pleadings,[1] the relevant legal authority, and the record as a whole, the Court concludes that BOP's ARP offers an "available remedy" for inmates challenging SAMs, and therefore Savage was required to pursue his grievance through that process. Because he has failed to exhaust his administrative remedies and failed to demonstrate a compelling reason for bypassing the administrative process, the Court shall **GRANT** Defendants' [14] motion and shall **DISMISS** this case without prejudice.

## I. BACKGROUND

### A. Factual Background

Savage has been in federal custody since 2004, when he was charged in the U.S. District Court for the Eastern District of Pennsylvania ("EDPA") with drug trafficking and related crimes. Compl. ¶ 19, ECF No. 1. Since 2007, DOJ has imposed SAMs due to Savage's solicitation of homicides from prison via telephone calls and messages through his sister. Defs.' Mot. at 8. Pursuant to 28 C.F.R. § 503, the Attorney General "may authorize the Warden to implement special administrative measures [SAMs] that are reasonably necessary to protect persons against the risk of death or serious bodily injury." SAMs confine prisoners to solitary units and severely limit communication with other people, both inside and outside the prison. Compl. ¶¶ 23–24. In 2013, Savage was convicted[2] and sentenced to death. He is incarcerated at ADX Florence. *Id.*

---

[1] The Court's consideration has focused on the following:
- Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Mot."), ECF No. 14-1;
- Plaintiff's Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Opp'n"); ECF No. 19; and
- Reply in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Reply"), ECF No. 22.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[2] Savage was convicted of conspiring to participate in a racketeering enterprise, violent crimes in aid of racketeering murder, conspiring to commit murder, retaliating against a witness, and using fire to commit a felony. Defs.' Mot. at 3–4.

¶ 6.  Savage's contacts are currently limited to seven people (in addition to his counsel): his older sister, her two adult children, Savage's three adult children, and the mother of one of his children. *Id.* ¶ 25.  The SAMs require Savage's phone calls and visits to monitored and his mail to be screened.  Defs.' Mot. at 6.

The Bureau of Prisons ("BOP") maintains an Administrative Remedy Program ("ARP"), which allows inmates to file grievances related to their confinement.  28 C.F.R. §§ 542.10–542.19. The ARP consists of four steps: (1) file an informal grievance (Form BP-8) with the appropriate BOP staff member; (2) file a formal grievance with the Warden (Form BP-9); (3) appeal to the Regional Director within 20 days of the Warden's response (Form BP-10); (4) appeal to the General Counsel of BOP within 30 days of the Regional Director's response (Form BP-11).

Since Savage's incarceration began in 2004, he has submitted 60 formal administrative remedy requests and/or appeals (including several related to his SAMs) with BOP.  Defs.' Statement of Material Facts as to Which There is No Dispute ("Defs.' Stmt.") ¶ 5, ECF No. 14-2. Copies of Savage's logged grievances on the present record do not clearly describe the grievances and the pursued (or lack of) resolutions.  *See generally* Defs.' Mot. Ex. A (Pl.'s ARP Requests), ECF No. 14-5.  It appears that Savage has filed several SAMs-related grievances over the years, but the documents submitted to the Court do not show how the grievances were reviewed or if Savage pursued the grievances through the ARP's four steps.  *Id*.

In 2014 Savage's counsel in his capital case, Barry Fisher ("Fisher"), wrote to the Assistant United States Attorney for EDPA, David Troyer ("AUSA Troyer"), to request that several individuals be added to Savage's contact list; Savage claims that BOP officials at ADX Florence led him to believe this was an appropriate method to make a request.  Pl.'s Opp'n at 16.  AUSA Troyer informed Fisher that DOJ officials considered the request, and the recently renewed SAMs

(permitting Savage to contact his niece and nephew) were "[DOJ's] response to [Fisher's] letter."

*Id.*  Since 2015, Fisher has annually submitted letters to AUSA Troyer, "having been led to believe

such requests were the appropriate way to present requests to add social contacts […], and that

[each] year's renewed SAMs […] reflected Defendants' summary rejection of them."  *Id.*  AUSA

Troyer forwarded the requests to the Office of Enforcement Operations ("OEO") and other DOJ

officials.[3]  The letters reference previous conversations, requests, and responses, but do not include

evidence of these exchanges.  *See generally* Pl.'s Opp'n.  Following each request, DOJ officials

have authored, signed, and issued denials, citing Savage's past criminal history.  DOJ's annual

memoranda renewing Savage's SAMs include a footnote that states that "requests for additional

non-legal contacts may be submitted and will be considered on a case-by-case basis."  Pl.'s Opp'n

Ex. 14 (2021 SAM Extension Mem.) at 10 n.6, ECF No. 19-16.  However, the footnote does not

describe the submission process.

Savage's SAMs were again modified in 2020 and 2021, permitting him to take a

correspondence course with a local college and to communicate with an Imam.  Defs.' Mot. at 17.

Savage contends that this process was distinct from the process to modify the SAMs social contact

list because BOP first requires institutional approval for any inmate who wants to take a

---

[3] In January 2015, Fisher wrote to AUSA Troyer regarding Savage's SAMs, including following up on Savage's December 2013 request to add additional relatives and friends to his social contact list.  Pl.'s Opp'n Ex. 1 (Fisher Letter Jan. 7, 2015) at 2, ECF No. 19-3.  This letter notes that BOP officials at ADX Florence forwarded the request to the FBI.  *Id.*  In February 2015, Troyer responded to Fisher stating that Fisher "can assume that the newly enacted SAM is the Department's response to your letter.  As you can see, your requests to add Savage's niece and nephew to the list of visitors were in fact adopted and implemented, while some of your other requests were not."  Pl.'s Opp'n Ex. 16 (Email Exchange RE: 2015 SAM affirmation re Kaboni Savage) at 2, ECF No. 19-18.  In October 2015, Fisher wrote to the Director at OEO regarding Savage's SAMs, including a request to add the mothers of his children to the contact list, which was initially approved but later rescinded.  Pl.'s Opp'n Ex. 2 (Fisher Letter Oct. 5, 2015) at 2, ECF No. 19-4.  In September 2016, Fisher wrote to AUSA Troyer regarding Savage's SAMs, including a request to add additional family members and friends (specifically the mothers of Savage's other children) to his SAMs contact list.  Pl.'s Opp'n Ex. 3 (Fisher Letter Sept. 26, 2016) at 2, ECF No. 19-5.  In August 2017, December 2017, December 2018, December 2019, December 2020, Fisher wrote to AUSA Troyer renewing Savage's requests to add additional family members and friends to his SAMs contact list.  Pl.'s Opp'n Ex. 4 (Fisher Letter Aug. 3, 2017) at 2, 7, ECF No. 19-6; Pl.'s Opp'n Ex. 5 (Fisher Letter Dec. 15, 2018) at 2, ECF No. 19-7; Pl.'s Opp'n Ex. 6 (Fisher Letter Dec. 30, 2019) at 2, ECF No. 19-8; Pl.'s Opp'n Ex. 7 (Fisher Letter Dec. 11, 2020) at 2, ECF No. 19-9.

correspondence course or communicate with a spiritual advisor.  Pl.'s Opp'n at 24 (citing BOP

Program Statement P5360.09(10)(A)(1) (Dec. 31, 2004); BOP Program Statement P5354.03(6)(B)

(Dec. 17, 2003)).  Savage requested a modification to take the correspondence course in November

2019 and requested authorization for his Minister of Record in December 2020.  Pl.'s Statement

of Undisputed Material Facts ("Pl.'s Stmt.") ¶¶ 9–10, ECF No. 19-2.  Savage notes that these

requests were then forwarded to DOJ officials for approval.  Pl.'s Opp'n at 25.

In March 2021, Savage submitted a request to the Warden of ADX Florence, seeking to

allow him additional social contacts.  Defs.' Mot. at 13.  In June 2021, the Warden responded to

Savage's request and informed Savage that he must use a contact request form from his unit's

Special Investigative Services staff, which would then be forwarded to the FBI and U.S. Attorney's

Office for EDPA for approval.  Defs.' Mot. Ex. B (Pl.'s Mar. 2021 ARP Request) at 2, ECF No.

14-6. Savage did not appeal the Warden's response to the BOP Regional Director or the Office of

General Counsel (which the Warden noted as an option in his response), did not submit any contact

request forms as instructed by the Warden, and did not seek an administrative remedy related to

any such form.  Defs.' Mot. at 13.  The Warden's response noted that Savage had not submitted

"any requests for modification (for social contact) in several years – aside from two relatively

recent requests to add an Imam and a college as approved contacts."  Pl.'s Mar. 2021 ARP Request

at 2.  The response also stated that a review of Savage's SAMs showed that his SAMs were

modified in 2015 to allow communication between Savage and his niece and nephew.  *Id*.

Savage indicates that he filed the March 2021 grievance "only out of concern that the

government might claim he needed to 'exhaust these remedies'" and noted the remedy process'

"futility" as BOP lacks authority to modify SAMs.  Pl.'s Opp'n at 17.  Savage characterizes the

Warden's response as a notification that he could make his request through unit staff, but that staff

would merely transmit it to DOJ, emphasizing how the Warden's response mentions that the reply was "for informational purposes only." *Id.*   Savage also notes that, in response to previous modification requests, DOJ officials never claimed that he or his counsel used the incorrect process or that his requests must be submitted through BOP's ARP. *Id.* at 21.

### B. Procedural History

Savage filed his Complaint on April 15, 2021 against Defendants DOJ and certain DOJ officials[4] challenging the SAMs renewal, stating that DOJ's "blanket refusal, for the past six years, to add any family members or friends" to Savage's social contact list without any reason or process violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* because the Defendants' actions "violate DOJ's own regulations" and are, therefore, "arbitrary, capricious, an abuse of discretion, and not in accordance with law" and the First Amendment to the United States Constitution as Defendants' actions "deprive Mr. Savage of his First Amendment rights to free speech, free association, and familial association."[5]   Pl.'s Opp'n at 15; *see generally* Compl. Savage seeks an injunction requiring Defendants to grant Savage's requests, or to revisit his requests and apply proper legal standards.

Savage claims that he has exhausted his administrative remedies because he applies annually to DOJ for social contact modifications to his SAMs and because he has no other administrative processes available to offer relief.   Compl. ¶ 16.   Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on September 29, 2021.   Defs.' Mot.

---

[4] Savage's claims against DOJ also name officials Merrick Garland (Attorney General), Robert Bryden II (Director for DOJ's OEO), and Jennifer Hodge (Deputy Assistant Attorney General) as Defendants. Compl. ¶¶ 7–10.

[5] Although neither party discusses the statute of limitations for Savage's action, he is within the designated period; the statute of limitations for inmate grievances is tolled until the claim has been exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999). Federal courts apply the state's statute of limitations to inmate civil rights claims, and in this case the District of Columbia's statute of limitations is three years. *Hardin v. Straub*, 490 U.S. 536, 538 (1989); D.C. Code Ann. § 12-301.

Defendants argue that Savage failed to exhaust his administrative remedies prior to filing this lawsuit; according to Defendants, the ARP offers "some relief" because it allows BOP to coordinate with other agencies "to evaluate each proposed new contact to ensure that any communications and visits with such persons would not circumvent the SAMs' intent of significantly limiting the inmate's ability to communicate (send or receive) threatening information." Defs.' Mot. at 17. Therefore, according to Defendants, the PLRA required Savage to have first exhausted the ARP's process before seeking judicial intervention. Savage filed his Opposition on November 3, 2021. Pl.'s Opp'n. Defendants filed their reply on November 24, 2021. Defs.' Reply. Defendants' motion is ripe for the Court's review.

## II.    LEGAL STANDARD

"[A] Rule 12(b)(6) motion to dismiss for 'failure to state a claim upon which relief can be granted' or a Rule 56 motion for summary judgment . . . are the appropriate vehicles to challenge an alleged failure to exhaust administrative remedies under the PLRA." *Johnson v. Dist. of Columbia*, 869 F. Supp. 2d 34, 37 (D.D.C. 2012) (quoting *Lopez v. Huff*, 508 F. Supp. 2d 71, 75 n.4 (D.D.C. 2007)) (additional citation omitted). "District courts may refer to materials outside the pleadings in resolving a 12(b)(6) motion. But when they do, they must also convert the motion to dismiss into one for summary judgment." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011) (citing Fed. R. Civ. P. 12(d)). Here, both parties have submitted, and the Court has considered, matters outside of the pleadings to address whether Savage has exhausted his administrative remedies. Accordingly, the Court treats Defendants' motion as one for summary judgment under Rule 56.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

## III.    DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before seeking judicial relief. 42 U.S.C.A. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The PLRA's exhaustion requirement "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," thereby preventing frivolous litigations that could be resolved at the institutional level. *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Exhaustion also improves litigation "by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Porter* 534 U.S. at 525 (litigation "could be facilitated by an administrative record that clarifies the contours of the controversy"). Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The defendant "bear[s] the burden of proving 'that an administrative remedy was available and that [the plaintiff] failed to pursue it.'" *Crouch v. Brown*, 27 F. 4th 1315, 1320 (7th Cir. 2022) (quoting *Thomas v. Reese*, 787 F. 3d 845, 847 (7th Cir. 2015)).

In addition to the PLRA's exhaustion requirements, regulations applicable to SAMs direct that "[t]he affected inmate may seek review of any special restrictions imposed … through the Administrative Remedy Program." 28 C.F.R. § 501.3(e).

Defendants argue that by submitting his request to modify his SAMs directly to DOJ—bypassing BOP's ARP—Savage has failed to exhaust his administrative remedies, requiring dismissal of this case. Savage argues that the only possible relief the ARP could offer is to forward his grievance to DOJ, which is not an "available remedy" under the PLRA. Because Savage directly petitioned DOJ (the final authority on SAMs) and annually received denials from them, he contends that he has effectively exhausted his administrative remedies. For the reasons below, dismissal is appropriate because Savaged has failed to exhaust his administrative remedies, as required by the PLRA.

### A. The ARP Offers "Some Relief" and Therefore is an "Available Remedy" Under the PLRA.

An inmate is only required to exhaust "available" remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016). The test for determining the availability of a remedy is objective, "that is, would a similarly situated individual of ordinary firmness have deemed [it] available." *Hemphill v. New York*, 380 F. 3d 680, 688 (2d Cir. 2004) (citation omitted). An available remedy must offer "the possibility of *some relief* for the action complained of," be "capable of use for the accomplishment of a purpose," and "is accessible or may be obtained." *Booth v. Churner*, 532 U.S. 731, 737–38 (2001) (emphasis added). In contrast, a remedy is *not* "available" if it "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," when the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44. If a remedy process is "susceptible to multiple reasonable interpretations" the inmate "should err on the side of exhaustion." *Id*. at 644.

The ability of an agency's administrative process to offer *some* relief or take some action is sufficient to serve as an "available remedy" for PLRA purposes. *See Booth*, 532 U.S. at 736, 741 (holding that inmates must exhaust the administrative remedy process before filing a suit if it offers some relief, even if the process could not provide the pursued money damages); *Varner v. Shepard*, 11 F. 4th 1252, 1259 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1172 (2022) (holding that the Department of Correction's remedy process could offer some relief because it could forward complaints and launch an investigation).  Only when the process is incapable of providing any relief or taking any action whatsoever to address the grievance is there " no administrative process to exhaust." *Kaemmerling v. Lapin*, 553 F. 3d 669, 674–75 (D.C. Cir. 2008) (holding that BOP could not offer the plaintiff an available remedy for his challenge to its collection of his DNA because BOP lacked discretion to take any action to respond to the challenge or to refuse to collect the DNA).

Although BOP lacks the authority to authorize SAMs, other courts have determined that inmates must exhaust their administrative remedies through BOP's ARP before challenging SAMs in court because BOP can take some action to address the grievance.  *See Yousef v. Reno*, 254 F. 3d 1214, 1221 (10th Cir. 2001) (concluding that the ARP is an available remedy for challenging specific SAMs because BOP has discretionary power to reassess the Attorney General's authorized restrictions and conditions that led to the restrictions); *Tsarnaev v. Garland*, No. 21-CV-00010-MEH, 2022 WL 2077949, at *1 (D. Colo. June 9, 2022) (holding that BOP's remedy process is sufficiently effective for challenging SAMs to require complete exhaustion by the plaintiff, noting that inmates with SAMs have used the process to modify their SAMs and that BOP has authority to alter SAMs to the extent it does not concern national security but rather issues of prison management and conditions of confinement); *Abdulmutallab v. Barr*, No. 17-CV-02493-RM-

KMT, 2019 WL 4463282, at *6 (D. Colo. Sept. 18, 2019) (concluding that the ARP is an available remedy because the process can and has provided the plaintiff some relief from the imposed SAMs, including facilitating a request for more than one visitor at a time).

Here, BOP officials were not "unable or consistently unwilling to provide any relief" to Savage, the ARP process is not "so opaque" it becomes unusable, and BOP officials did not prevent Savage from using the process. *Ross*, 578 U.S. at 643. Savage does not allege that the process was so burdensome as to render it unusable; in fact, Savage has utilized the ARP at least 60 times. Defs.' Stmt. ¶ 5. Savage also used BOP's processes to modify his SAMs to take a correspondence course and to communicate with an Imam. Defs.' Mot. at 17. Moreover, BOP officials did not refuse or fail to consider Savage's March 2021 SAMs remedy request; the Warden informed Savage of the proper process to pursue his grievance. Pl.'s Mar. 2021 ARP Request at 2. Although Savage contends that the Warden merely reiterated BOP's lack of authority and stated that BOP would relay the request to Defendants, the Warden's response demonstrates that BOP reviewed Savage's records, includes instructions on how to properly submit contact request forms, and directs Savage to submit an appeal if he is not satisfied with the response. Pl.'s Mar. 2021 ARP Request at 2–3. Therefore, BOP offers some relief to an inmate challenging SAMs.

Savage attempts to distinguish his requests for modifications to his SAMs for religious and academic purposes—for which he *did* pursue relief through BOP's ARP—from the requested social contact modifications at issue here. Savage claims that he used the remedy process for the former because BOP requires institutional approval for any inmate to take a correspondence course or communicate with a spiritual advisor. Pl.'s Opp'n at 24. Savage submitted those requests to BOP in the first instance, and then BOP forwarded the requests to DOJ officials for approval. *Id.* at 24–25. However, his use of the ARP process for his spiritual and educational modification

11

requests demonstrates that the ARP process worked to modify SAMs, and that BOP officials *can* take some action to enable the addition of social contacts as they evaluate logistical requests, share information, and facilitate approval. *See* Defs.' Reply at 3. Furthermore, as explained by Defendants, filing a SAMs-related grievance allows BOP to more effectively communicate with other agencies to ensure the SAMs' intent is realized and provide information as needed for the agencies to evaluate the request.[6] Defs.' Mot. at 17; Defs.' Reply at 3. Although the ARP is not a one-stop-shop to resolve Savage's SAM-related complaints, it is far from a "dead end."

Even if the Court finds that the regulation providing that inmates "may" file a SAMs complaint through the ARP does not clearly *require* inmates to do so, prior case law cautions inmates to exhaust if there is any doubt as to statutory interpretations or futility. *Ross*, 578 U.S. at 644; *Brown v. Valoff*, 422 F.3d 926, 935 n.10 (9th Cir. 2005). Savage himself acknowledged the exhaustion requirement, stating that he filed the March 2021 grievance through the ARP "out of concern that the government might claim he needed to 'exhaust these remedies'"; accordingly, he should have pursued his initial claim through the ARP's four-tiered process to truly exhaust.[7] Pl.'s Opp'n at 17.

---

[6] In the recent *Tsarnaev* case, the Government filed a declaration from Christopher B. Synsvoll, the Supervisory Attorney BOP facilities, including ADX Florence. *See* Synsvoll Decl., *Tsarnaev v. Garland*, 1:21-cv-00010, ECF No. 51-1. Synsvoll's declaration includes several examples of how SAM inmates have used the ARP to obtain modifications, including permitting social communications with individuals not initially authorized in the SAM, permitting legal communications with prospective attorneys, modifying the mass communications provisions in the SAM by expanding the scope of publications and television channels available to SAM inmates, modifying visiting protocols to allow for more than one visitor at a time in the ADX visiting room, and eliminating a prior prohibition on group prayer for all inmates subject to SAM. *Id.* ¶ 14. Though not integral to its analysis, the Court takes judicial notice of the facts contained in this sworn declaration submitted in another judicial proceeding addressing the same administrative exhaustion process at issue in this case. *See* Fed. R. Evid. 201(b)(2) (The court may judicially notice a[n] [adjudicative] fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[7] Furthermore, Savage has encountered the exhaustion issue in prior legal proceedings. *United States v. Savage*, No. CRIM.A. 07-550-03, 2010 WL 4236867, at *7 (E.D. Pa. Oct. 21, 2010) (holding there was no need to exhaust the ARP when elements of SAMs affect his right to a fair and speedy trial); *United States v. Savage*, No. CRIM.A. 07-550-03, 2012 WL 5866059, at *5 (E.D. Pa. Nov. 16, 2012) (partially holding that there was no need to exhaust the ARP when the SAM grievance was sufficiently related to trial preparation).

In sum, BOP's ARP offers an "available remedy" to inmates challenging SAMs because BOP can take certain actions to assist inmates in obtaining relief, such as providing information to DOJ and coordinating inmates' requests.

### B. Savage Failed to Exhaust His Administrative Remedies by Bypassing the ARP Without a Compelling Reason.

An inmate successfully exhausts a claim by pursuing the remedy process to its final stage: "an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). Proper exhaustion requires compliance with procedural rules "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Bypassing procedural rules would undermine the PLRA's intent to allow corrections officials the opportunity to resolve issues internally before launching into litigation. *Porter*, 534 U.S. at 525.

However, the PLRA's exhaustion requirement may be satisfied if prison officials decide a procedurally flawed grievance on the merits because, in such situations, the "benefits [of exhaustion] are fully realized[:] [a] complete administrative record exists, and a reviewing court will have the benefit of the agency's institutional perspective." *Hammett*, 681 F. 3d at 947–48; *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–26 (6th Cir. 2010) (holding that an inmate was not required to exhaust the grievance process because the correctional department addressed the grievance on the merits, stating that prison officials were given a "fair opportunity" to resolve the issue, and ignoring such would prompt "unnecessary and wasteful federal litigation in the process" and give "merits-based grievance denials underserved insulation from federal judicial review"); *Brown*, 422 F.3d at 935 n.10  (holding that although a prisoner "need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are

available," that "it may be advisable for an inmate to appeal every issue to the highest level to avoid any question as to whether the administrative process has been adequately exhausted").

Nonetheless, legal authority interpreting the PLRA's exhaustion requirement directs that a prisoner's actions to pursue a grievance outside of the administrative process fail to properly exhaust that grievance. *See Varner*, 11 F. 4th at 1261, 1263 (stating that if the court were writing the PLRA it might create an exception to account for the unique circumstances in the plaintiff's case, but that type of legislative action is in Congress's purview, and Congress explicitly prescribes exhaustion through the administrative process); *Yousef*, 254 F. 3d at 1221–22 (holding that the plaintiff's letter to the Attorney General and his informal and formal petitions failed to exhaust his administrative remedies and did not obviate the need to exhaust remaining administrative remedies, and that the Assistant Attorney General's response to the prisoner's informal complaint that failed to inform the prisoner of the ARP had no impact on the exhaustion requirement); *Canady v. Davis*, No. 07 C 5028, 2009 WL 1177081, at *3 (N.D. Ill. Apr. 29, 2009), *vacated and remanded on other grounds*, 376 F. App'x 625 (7th Cir. 2010) (holding that the plaintiff failed to properly exhaust available administrative remedies because he deliberately bypassed the grievance process and offered no compelling reason to circumvent it).

Savage has failed to comply with the process prescribed by 28 C.F.R. § 501.3(e), which specifies that "[t]he affected inmate may seek review of any special restrictions imposed . . . through the Administrative Remedy Program." Although Savage initiated a challenge to his SAMs in March 2021, he failed to appeal this first-level grievance to the subsequent tiers. Defs.' Mot. at 15. Correctly noting that § 501.3(e) provides that an inmate "*may*" seek review of a SAMs through the ARP, Savage contends that this process is merely one method for Savage to submit a grievance. Pl.'s Opp'n at 17. However, other courts have made clear that the ARP is a sufficiently effective

14

means of challenging SAMs, and accordingly must be utilized for proper exhaustion. *See Yousef*, 254 F. 3d at 1221; *Tsarnaev*, 2022 WL 2077949, at \*1; *United States v. Ali*, 396 F. Supp. 2d 703, 707 (E.D. Va. 2005); *Abdulmutallab*, 2019 WL 4463282, at \*6. Moreover, the use of the word "may" in § 501.3(e) does not render the ARP's four-step process optional because, under the PLRA, all *available* remedies must be exhausted. *See Porter*, 534 U.S at 324; *Johnson v. Thyng*, 369 F. App'x 144, 147–48 (1st Cir. 2010) (rejecting the proposition that the word "may" makes a grievance procedure optional because all available remedies must be exhausted); *Owens v. Keeling*, 461 F.3d 763, 770 n.4 (6th Cir. 2006) (concluding that permissive language was irrelevant to considering the exhaustion issue).

The Court may overlook procedural defaults if there is a compelling reason for bypassing the administrative process, such as if prison staff prevented the inmate from filing a grievance. *Canady*, 2009 WL 1177081, at \*3. Here, the compelling reasons offered by Savage for permitting him to bypass the ARP is the same argument rejected above—that the ARP was an "unavailable" remedy. *See supra* Section III(A). As previously explained, BOP officials did not prevent Savage from utilizing the ARP process, which Savage himself had previously successfully used. Defs.' Mot. at 17. Savage also argues that responses from AUSA Troyer led him to believe that the direct submissions to him were a valid method to challenge SAMs. However, inmates "should not rely on [their] own contrary interpretations of the process to claim exhaustion." *Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010); *see also Yousef*, 254 F. 3d at 1221–22.

Finally, it is unclear from the present record if DOJ considered Savage's requests and denied the requests "on the merits." *Hammett*, 681 F.3d at 947. A properly submitted grievance would have established the specific information at issue and whether or not DOJ's denials were in fact "on the merits." Absent a complete administrative record created through the ARP process,

the "contours of the controversy" are unclear. *Porter*, 534 U.S. at 525.  Allowing inmates to bypass the specified grievance procedure would complicate the review process and produce disorderly lawsuits without complete records.  Such results defeat the role of exhaustion: to weed out frivolous lawsuits, create a complete record, and to facilitate the grievance review process.

Savage's direct appeal to the DOJ to modify his SAMs-permitted social contacts circumvented the BOP's grievance mechanism.  Savage has not offered a compelling reason justifying his failure to comply with the administrative remedy available to him.  As such, he has failed to exhaust his administrative remedies, requiring dismissal of this case.  Accordingly, the Court does not reach Defendants' additional arguments regarding Savage's failure to state a claim for First Amendment violations.  *See* Defs.' Mot. at 12–18.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' [14] motion to dismiss or, in the alternative, for summary judgment will be **GRANTED** and Savage's claims will be dismissed without prejudice. A separate order accompanies this Memorandum Opinion.

```
       /s/
```
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: July 28, 2022

16